LAW OFFICES OF BRUCE J. DUKE
By: Bruce J. Duke, Esq.
4201 Grenwich Lane
Mount Laurel, NJ 08054
P: (856) 701-0555
F: (856) 282-1079
Attorney ID BD0077
bruceduke@comcast.net
Attorney for Plaintiff Richard Annunziata

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)

| | |
|---|---|
| RICHARD ANNUNZIATA, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> : <br> FREDERICK DUBOWSKY, ESQ., : <br> : <br> Defendant. : | Civil Action No. <br><br><br><br> VERIFIED COMPLAINT FOR DAMAGES, PUNITIVE DAMAGES AND OTHER RELIEF AND JURY DEMAND |

Plaintiff Richard Annunziata, by and through undersigned counsel, hereby files this complaint against Frederick Dubowsky, Esq., and in support thereof, avers as follows:

JURISDICTION AND VENUE

1.　This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a), in that the amount in controversy exceeds $75,000 and the parties are residents of different states.  Plaintiff is a resident of New York and defendant is, upon information and belief, a New Jersey resident.

1

2.	Venue is proper in this district as most of the acts involved in this cause of action occurred in the State of New Jersey.

## PARTIES

3.	Plaintiff Richard Annunziata is an adult individual and a citizen of the state of New York with an address of 77 Austin Rd., Mahopac, NY 10541.

4.	Defendant Frederick Dubowsky is an attorney at law in the State of New Jersey and, upon information and belief, has a business address of 1996 Route 17, Edison, NJ 08817.

## FACTUAL BACKGROUND

5.	In or about May 2011, plaintiff retained the services of defendant to represent his interest in a matter known as Richard Annunziata vs. Putnam at Tinton Falls, et als, Docket Number MON-C-125-10.

6.	By way of background, this case involved a real estate dispute between plaintiff and Gino Palazollo, who provided certain financial support to plaintiff to purchase a development property in Tinton Falls, New Jersey.  In particular, this controversy involved control of Putnam at Tinton Falls, a New Jersey limited liability company that owned the development property, and plaintiff's efforts to exercise an option agreement to purchase the remainder of the limited liability company interest from Mr. Palazollo.

7.	Defendant was originally retained prior to plaintiff's filing a lawsuit against Mr. Palazollo, and at least initially seemed to adequately represent plaintiff's interests in, among other things, a series of letters with an attorney for Mr. Palazollo, pursuant to which plaintiff made an effort to amicably resolve this matter.

8. Such efforts were ultimately unsuccessful, and plaintiff determined that he had no choice but to bring a lawsuit, which Mr. Annunziata filed on or about August 25, 2010. Plaintiff initially represented himself pro se, but shortly retained Mr. Dubowsky in this case.

9. After defendants filed an answer and counterclaim, on or about November 10, 2010, Hon. Thomas W. Cavanagh, Jr., J.S.C. entered an order pursuant to which, inter alia, Judge Cavanagh ordered that plaintiff's counsel (Mr. Dubowsky) release to plaintiff (Mr. Annunziata) the total amount of $100,000.00. A true and correct copy of this Order is attached hereto as Exhibit "A" and incorporated herein by reference.

10. Subsequently, on or about March 24, 2011, Judge Cavanagh entered a Consent Order, pursuant to which, inter alia, the court appointed Hon. Robert W. O'Hagan (Ret.) as the arbitrator to decide the matters in dispute. A true and correct copy of this Order is attached hereto as Exhibit "B" and incorporated herein by reference.

11. During the summer of 2011, the arbitrator held the arbitration, which was bifurcated into two parts, to determine: (i) whether and to what extent Mr. Annunziata exercised the option agreement; and (ii) damages. Despite repeated requests from Mr. Annunziata, the arbitrator made the highly unusual determination that he would not permit a court reporter. Mr. Annunziata was forced to have his wife record the proceedings on her cell phone, which were then transcribed at Mr. Annunziata's expense, by a certified court reporter.

12. The first part of the arbitration was decided in favor of defendants, and on October 24, 2011, the arbitrator issued a decision, pursuant to which he claimed that Mr. Annunziata had not properly exercised his option agreement to purchase the remainder of the entity known as Putnam at Tinton Falls. At the same time, the arbitrator encouraged the parties to engage in settlement discussions, which were held.

13. During the October 24 hearing, Mr. Dubowsky and the arbitrator, along with Edward McKenna, the attorney for defendants, claimed that a "settlement" was reached as to all issues. The proposed settlement was that Mr. Annunziata would give up his interest in an entity owning property worth tens of millions of dollars for the total of $900,000, only $100,000 of which was guaranteed and $800,000 of which was to be held in escrow pending resolution of a separate case.

14. Mr. Dubowsky and the other parties discussed this proposed settlement without Mr. Annunziata in the room; indeed, Mr. Annunziata had already left the arbitrator's office. In other words, an attorney agreed to settle a case without even discussing the proposed settlement with his client, who stood to lose millions of dollars if the proposed settlement was effectuated.

15. On October 25, 2011, Mr. Annunziata wrote a letter to Mr. Dubowsky, pursuant to which Mr. Annunziata sought clarification of the then-pending settlement offer, and that Mr. Annunziata wished to review, evaluate and decide on the proposal. A true and correct copy of this letter is attached hereto as Exhibit "C" and incorporated herein by reference.

16. Despite these efforts, Mr. Annunziata never received anything back from Mr. Dubowsky regarding the terms of the alleged offer. Instead, On October 27, 2011, Mr. Dubowsky faxed Mr. Annunziata a simple one-sentence document seeking authority to accept a $900,000.00 to settle the case. A true and correct copy of this is attached hereto as Exhibit "D" and incorporated herein by reference.

17. On that same date, Mr. Annunziata faxed to Mr. Dubowsky a letter in response to his request for authorization to accept the $900,000 offer. In his response, Mr. Annunziata clearly advised that he: (i) would accept the $900,000 cash offer not contingent on

any other pending lawsuits; (ii) four (4) building lots with improvements; and (iii) the deed to be held in escrow pending termination of the Ross litigation. Mr. Annunziata further advised that the offer contained in this letter be good only until 5:00 PM that day. Both Mr. and Mrs. Annunziata signed this offer. A true and correct copy of this letter is attached hereto as Exhibit "E" and incorporated herein by reference.

    18. In response to Mr. Annunziata's correspondence, and rather than respond in a professional manner, Mr. Dubowsky sent a fax to Mr. Annunziata that stated "[I]f you think what you sent me is better for you than what I sent you to sign that should convince you both to stop playing lawyer." A true and correct copy of this fax is attached hereto as Exhibit "F" and incorporated herein by reference.

    19. On October 28, 2011, Mr. Annunziata forwarded correspondence to Mr. Dubowsky directing certain actions relevant to preparing the remainder of the Arbitration Hearing dispute.

    20. On October 31, 2011, Mr. Dubowsky sent a letter to Mr. and Mrs. Annunziata, pursuant to which he states that he (and Mr. Weir) have "begged" him to accept a $900,000 settlement, and that "[w]ithout your authority we have no idea how to proceed." A true and correct copy of this letter is attached hereto as Exhibit "G" and incorporated herein by reference.

    21. On October 31, 2011, in recognition of Mr. Annunziata's desire to proceed and his rejection of all then pending settlement offers, Mr. Dubowsky faxed to Mr. Annunziata a document (a true and correct copy of which is attached hereto as Exhibit "H" and incorporated herein by reference) requesting that Mr. Annunziata answer a series of questions, in the following format:

>Answer the following questions please.
>
>I will ___ will not ___ accept the $900,000 cash settlement to end the arbitration. (In response to this question, Mr. Annunziata checked "will not").
>
>If not, do I have authority to tell the Arbitrator and Mr. McKenna of your decision? Yes ___ No ___ (In response to this question Mr. Annunziata answered "Yes")
>
>We are abandoning completing the arbitration and Bob and I are discharged from that endeavor. Yes ___ No ___ (In response to this question Mr. Annunziata answered "No")
>
>We wish to proceed further with this arbitration. Yes ___ No ___ (In response to this question Mr. Annunziata answered "Yes")

22. On November 1, 2011, Mr. Dubowsky wrote to Mr. Annunziata rejecting Mr. Annunziata's desire to terminate Mr. Dubowsky's services in light of the settlement negotiation fiasco created by Mr. Dubowsky. A true and correct copy of this letter is attached hereto as Exhibit "<u>I</u>" and incorporated herein by reference.

23. Finally, on November 4, 2011, after Mr. Annunziata specifically and repeatedly advised that he did not agree to the proposed settlement, Mr. Dubowsky sent a letter to Mr. McKenna, defendants' counsel, pursuant to which he states that "**<u>Bob [Weir] and I have confirmed that our client stands behind the $900,000 settlement presented.</u>**" (Emphasis supplied.) A true and correct copy of this letter is attached hereto as Exhibit "<u>J</u>" and incorporated herein by reference.

24. Mr. Dubowsky refused his otherwise legitimate termination and evidenced intent to proceed with creating a settlement which would further his own pecuniary interests. In the period from October 25, 2011-to November 22, 2011, Mr. Annunziata and co-counsel Robert Weir, Esq. exchanged numerous emails concerning the ongoing preparation of the case.

Critically, this exchange of email included an email dated November 15, 2011, which set forth in detail an "action plan" to proceed with the second half of the Arbitration.

25. On November 21, 2011, in light of Mr. Dubowsky's abandonment of Mr. Annunziata and expressed intent of self-dealing, Mr. Annunziata retained the services of Peter C. Lucas, Esq. to represent him in the second half of the arbitration proceeding.

26. The arbitrator scheduled another arbitration hearing at the office of Mr. Palazzolo's attorney for November 22, 2011. On that date, Mr. Lucas and Mr. Annunziata appeared to proceed with what they believed would be the second half of the bifurcated Arbitration. Notably, Mr. Lucas had contacted Mr. Dubowsky and requested a copy of Mr. Dubowsky's file so that Mr. Lucas could prepare for this hearing. Despite his direct obligation to do so, Mr. Dubowsky refused to provide such cooperation and to turnover to Mr. Annunziata or to his new counsel this file.

27. At that time, the Arbitrator allowed the parties to continue with further lengthy settlement negotiations, to no avail. Upon the failure of such negotiations, the Arbitrator then announced that rather than continue with the second half of the bifurcated Arbitration proceeding, he instead would conduct a "settlement enforcement hearing" based on the premise that a settlement had been reached on October 24, 2011.

28. This announcement took both Mr. Lucas and Mr. Annunziata by complete surprise. Mr. Lucas requested an adjournment of the hearing because the Arbitrator gave no notice of the "settlement enforcement". Mr. Lucas required time to review the file and prepare for this issue, especially given the surprise nature of the Arbitrator's announcement.

29. The Arbitrator unilaterally rejected the adjournment request and further announced that he would take the testimony of Mr. Dubowsky, Mr. Annunziata's former

counsel, to establish that the parties reached a settlement on October 24, 2011. Conveniently, Mr. Dubowsky was present at the Arbitration Hearing. Despite Lucas' objection as to the waiver of any attorney-client privilege, the Arbitrator allowed Dubowsky to testify.

30. During this hearing, Mr. Dubowsky was questioned by Ed McKenna, counsel for defendants, as follows:

> Q: (By Mr. McKenna) And I had stated previously in argument before Judge O'Hagan that specifically as to the terms of the settlement and I'd like to repeat them for you now and ask you to listen to them, okay?
> Did we agree that there would be the sum of $100,000 immediately pursuant to the settlement?
>
> A: (By Mr. Dubowsky) It was to pay the professionals I believe.
>
> Q: Okay. And was there the sum of $800,000 that was to be held in escrow pending the release of the Ross lis pendens?
>
> A: Correct.
> (Transcript of November 22, 2001 Arbitration Hearing, p. 31; lines 4-15).

31. Amazingly, Mr. Dubowsky then specifically testified that Mr. Annunziata agreed to the proposed settlement, as follows:

> Q: Did you advise as to the plaintiff's position regarding the settlement?
>
> A: Yes.
>
> Q: And what was your advice?
>
> A: He was on board with it. He was in agreement to it. (Emphasis supplied)
>
> Q: And that was specifically based upon your discussions with your client, correct?
>
> A: **Absolutely, sure.** (Emphasis supplied)
>
> (Id., 34: 23-25; 35: 2-9)

8

32. Mr. Dubowsky's testimony that Mr. Annunziata agreed to a settlement, made almost a month after the claimed settlement, was completely contradicted by his actions after the October 24, 2011 Arbitration Hearing date.

33. As set forth in ¶¶14-21, supra, after October arbitration hearing, Mr. Dubrowsky exchanged a number of letters and emails with Mr. Annunziata, wherein Mr. Dubrowsky "begs" Mr. Annunziata to accept the proposed settlement (See, Ex. G), Mr. Annunziata specifically rejects the proposed settlement (See, Ex. H), yet Mr. Dubrowsky then AGAIN communicates to opposing counsel that Mr. Annunziata accepted the settlement.

34. Defendant had only one priority in his representation of plaintiff; getting his hands on the $100,000.00 guaranteed portion of the settlement, which was designated to pay attorney's fees (including defendant's). At that point, defendant in every respect abandoned plaintiff, testifying against him and forsaking the arbitration hearing, despite plaintiff's express wishes to the contrary.

## FIRST COUNT
(Legal Malpractice)

35. Plaintiff incorporates by reference the allegations in ¶¶1-34 as though fully set forth at length herein.

36. Defendant was required to exercise same legal skill as a reasonably competent attorney and to use reasonable care in determining and implementing a strategy to be followed to achieve plaintiff's legal goals.

37. In the course of handling the legal matter for plaintiff, defendant failed to act with the degree of competence generally possessed by attorneys in the state who handle legal matters similar to plaintiff's.

38. Defendant committed malpractice as to plaintiff in the following regard:

    a. advising opposing counsel and the arbitrator that plaintiff had agreed to settle the case when plaintiff specifically advised he would not settle;

    b. failing to obtain from plaintiff a signed authorization to settle the case;

    c. making material misrepresentations under oath that plaintiff had in fact settled the case when defendant knew that plaintiff did not authorize such a settlement;

    d. refusing to proceed with the arbitration as expressly instructed to do by plaintiff;

    e. placing his own pecuniary interest above that of his client by accepting an offer pursuant to which defendant would be paid but plaintiff would potentially receive nothing;

    f. refusing to turn over to plaintiff his case file to the new attorney retained by plaintiff so that plaintiff could proceed with the arbitration; and

    g. defendant's actions were so egregious that punitive damages are warranted.

39. As a direct and proximate result of defendant's malpractice, plaintiff sustained damages in an amount exceeding $5 million.

WHEREFORE, plaintiff Richard Annunziata demands judgment of and from defendant Frederick Dubowsky for $5 million in compensatory damages, punitive damages,

interest, attorney's fees and costs, and such other and further relief as this Court deems just and proper.

## SECOND COUNT
(Breach of Contract)

40. Plaintiff incorporates by reference the allegations in ¶¶1-39 as though fully set forth at length herein.

41. Defendant entered into a contract with plaintiff, pursuant to which defendant agreed to zealously represent plaintiff's interests in the arbitration proceeding.

42. Defendant also was obligated by this contract to take any and all actions in the best interest of plaintiff.

43. By his actions, defendant breached his contract with plaintiff in the following regard:

   a. advising opposing counsel and the arbitrator that plaintiff had agreed to settle the case when plaintiff specifically advised he would not settle;

   b. failing to obtain from plaintiff a signed authorization to settle the case;

   c. making material misrepresentations under oath that plaintiff had in fact settled the case when defendant knew that plaintiff did not authorize such a settlement;

   d. refusing to proceed with the arbitration as expressly instructed to do by plaintiff;

    e.  placing his own pecuniary interest above that of his client by accepting an offer pursuant to which defendant would be paid but plaintiff would potentially receive nothing;

    f.  refusing to turn over to plaintiff his case file to the new attorney retained by plaintiff so that plaintiff could proceed with the arbitration; and

    g.  defendant's actions were so egregious that punitive damages are warranted.

44. As a direct and proximate result of defendant's breach of contract, plaintiff sustained damages in an amount exceeding $5 million.

WHEREFORE, plaintiff Richard Annunziata demands judgment of and from defendant Frederick Dubowsky for $5 million in compensatory damages, punitive damages, interest, attorney's fees and costs, and such other and further relief as this Court deems just and proper.

### THIRD COUNT
(Breach of Fiduciary Duty)

45. Plaintiff incorporates by reference the allegations in ¶¶1-44 as though fully set forth at length herein.

46. Defendant was required to exercise the same legal skill as a reasonably competent attorney and to use reasonable care in determining and implementing a strategy to be followed to achieve plaintiff's legal goals. As a fiduciary of plaintiff, defendant was obligated to zealously represent plaintiff's interests.

47. By his actions, defendant breached his fiduciary obligations with plaintiff in the following regard:

    a. advising opposing counsel and the arbitrator that plaintiff had agreed to settle the case when plaintiff specifically advised he would not settle;

    b. failing to obtain from plaintiff a signed authorization to settle the case;

    c. making material misrepresentations under oath that plaintiff had in fact settled the case when defendant knew that plaintiff did not authorize such a settlement;

    d. refusing to proceed with the arbitration as expressly instructed to do by plaintiff;

    e. placing his own pecuniary interest above that of his client by accepting an offer pursuant to which defendant would be paid but plaintiff would potentially receive nothing;

    f. refusing to turn over to plaintiff his case file to the new attorney retained by plaintiff so that plaintiff could proceed with the arbitration;

    g. defendant's actions were so egregious that punitive damages are warranted.

48. As a direct and proximate result of defendant's breach of fiduciary obligations, plaintiff sustained damages in an amount exceeding $5 million.

WHEREFORE, plaintiff Richard Annunziata demands judgment of and from defendant Frederick Dubowsky for $5 million in compensatory damages, punitive damages,

interest, attorney's fees and costs, and such other and further relief as this Court deems just and proper.

## FOURTH COUNT
(Negligence/Negligent Misrepresentation/Fraudulent Inducement)

49. Plaintiff incorporates by reference the allegations in ¶¶1-48 as though fully set forth at length herein.

50. Defendant was required to exercise same legal skill as a reasonably competent attorney and to use reasonable care in determining and implementing a strategy to be followed to achieve plaintiff's legal goals.

51. In the course of handling the legal matter for plaintiff, defendant negligently failed to act with the degree of competence generally possessed by attorneys in the state who handle legal matters similar to plaintiffs.

52. Defendant fraudulently induced plaintiff to retain him on the premise that defendant was competent and would zealously represent plaintiff's interests.

53. Plaintiff relied on defendant's misrepresentations to his detriment.

54. Defendant negligently represented plaintiff in the following regard:

   a. advising opposing counsel and the arbitrator that plaintiff had agreed to settle the case when plaintiff specifically advised he would not settle;

   b. failing to obtain from plaintiff a signed authorization to settle the case;

   c. making material misrepresentations under oath that plaintiff had in fact settled the case when defendant knew that plaintiff did not authorize such a settlement;

d. refusing to proceed with the arbitration as expressly instructed to do by plaintiff;

e. placing his own pecuniary interest above that of his client by accepting an offer pursuant to which defendant would be paid but plaintiff would potentially receive nothing;

f. refusing to turn over to plaintiff his case file to the new attorney retained by plaintiff so that plaintiff could proceed with the arbitration; and

g. defendant's actions were so egregious that punitive damages are warranted.

55. As a direct and proximate result of defendant's negligence and fraud, plaintiff sustained damages in an amount exceeding $5 million.

WHEREFORE, plaintiff Richard Annunziata demands judgment of and from defendant Frederick Dubowsky for $5 million in compensatory damages, punitive damages, interest, attorney's fees and costs, and such other and further relief as this Court deems just and proper.

                Respectfully submitted,

                LAW OFFICES OF BRUCE J. DUKE

Dated: April 24, 2015        By:     /s/ Bruce J. Duke
                                          Bruce J. Duke